# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 722 | **DATE** | 10/20/2003 |
| **CASE TITLE** | Quantum Grinding Corp., Inc. vs. Supreme Screw Products Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, defendants' motion to dismiss the complaint is granted. The plaintiff shall, within twenty-one days from the date of this opinion, file an amended complaint that alleges federal jurisdiction if they can do so consistent with Rule 21. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 21 2003 date docketed | 28 |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | | |
| ✓ | Docketing to mail notices. | CLERK | docketing deputy initials | |
| | Mail AO 450 form. | 03 OCT 20 PM 2:56 | | |
| | Copy to judge/magistrate judge. | FILED DOCKETING | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

QUANTUM GRINDING CORP., INC.,           )
an Illinois Corporation;                )
ROBERT ZALENKA;                         )
WANDA ZALENKA,                          )
individually and as mother and next friend of  )
LYNETTE FARR, a minor, and              )
JERRAD FARR, a minor,                   )
                                        )
        Plaintiffs,                     )
    v.                                  )
                                        )    No. 03 C 0722
                                        )
SUPREME SCREW PRODUCTS, INC.,           )
an Illinois Corporation;                )    Judge John W. Darrah
EMERSON ELECTRIC CO., INC.,             )
a Missouri Corporation, d/b/a           )
ALCO CONTROLS;                          )
THOMAS WOOD;                            )
FRANK HARVAT;                           )
JIMMIE CARTER; and                      )
BRIAN HARTENSTINE,                      )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Now before the Court are Motions to Dismiss by Defendants (1) Supreme Screw

Products, Inc., Thomas Wood, Frank Harvat, and Jimmie Carter (collectively "Supreme" unless

otherwise noted); (2) Emerson Electric Company ("Emerson"); and (3) Brian Hartenstine against

Plaintiffs (1) Quantum Grinding Corporation; (2) Robert Zelenka; and (3) Wanda Zalenka,

individually and as mother of next friend of Lynette Farr and Jerrad Farr ("Quantum" unless

otherwise noted).

Quantum filed a seventeen-count complaint, and alleged federal jurisdiction based on both diversity of citizenship and federal question. Quantum's two federal counts are Count XI (violation of the Robinson-Patman Act by Supreme) and Count XVII (violation of the RICO Act by Supreme, Emerson, and Hartenstine).

The remaining fifteen counts are state law causes of action. Count I alleges a breach of contract by Supreme, and Count II alleges an account stated against Supreme. Count III alleges a breach of contract by Emerson; Count IV alleges an account stated against Emerson; and Count V alleges a breach of an oral contract by Emerson. Count VI alleges a charge of promissory estoppel and equitable estoppel against Emerson and Hartenstine.

Count VII alleges a breach of Uniform Commercial Code § 2-607 by Supreme. Count VIII alleges a breach of Uniform Commercial Code § 2-607 by Emerson and Hartenstine. Count IX alleges tortious interference with a prospective economic advantage by Supreme, Emerson, and Hartenstine. Count X alleges tortious interference with contractual relations by Supreme, Emerson, and Hartenstine.

Count XII alleges common law fraud by Supreme. Count XIII alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act by Supreme. Count XIV alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act by Emerson and Hartenstine. Count XV alleges commercial disparagement by Supreme. Finally, Count XVI alleges intentional infliction of emotional distress by Supreme.

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Quantum's Complaint. Plaintiff Quantum is an Illinois corporation. The remaining Plaintiffs, the Zelenkas and the Farr children, are all citizens of Illinois. Defendant Supreme Screw Products is an Illinois corporation. Defendants Thomas Wood, Frank Harvat, and Jimmie Carter are all citizens of Illinois as well. Defendant Emerson is a Missouri corporation. Defendant Hartenstine is a Missouri citizen.

Between 1992 and 2001, Quantum manufactured custom-made machine parts for Supreme, who, in turn, sold those parts to a division of Emerson, Alco Controls ("Alco"). By March, 2001, Supreme and Quantum's business relationship ended. Around that time, Quantum approached Emerson to see if Quantum could directly do business with Emerson. Emerson urgently needed the parts, and Quantum began to ship parts to Emerson. Thereafter, Quantum and Emerson entered into various written agreements concerning future deliveries.

While Quantum was dealing with Emerson, Supreme began interfering with this relationship. At this point, Supreme and Quantum were competitors in the same market. Supreme and their agents, Wood, Harvat, and Carter, allegedly made bribes to Emerson and its agent, Hartenstine, that were accepted. Throughout this period, Supreme knew that Quantum expected and entered into a business relationship consisting of written contracts with Emerson. After these alleged acts occurred, Emerson and Quantum's relationship ended.

## ANALYSIS

First, it must be determined whether there is federal jurisdiction. Quantum voluntarily dismissed one of the federal causes of action, Count XVI, the violation of the RICO Act by Supreme, Emerson, and Hartenstine.

As noted above, Quantum also sought to bring this matter into federal court by alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. However, after Emerson responded that complete diversity does not exist between the Plaintiffs and the Defendants, Quantum abandoned diversity of citizenship as a basis for federal court jurisdiction.

Quantum is left with one remaining federal claim: a violation of the Robinson-Patman Act by Supreme as a Basis for federal jurisdiction. In addition, Quantum seeks to bring the remaining fifteen state claims in federal court under 28 U.S.C. § 1367, the supplemental jurisdiction statute.

In the Seventh Circuit, section 2(c) of the Robinson-Patman Act reaches commercial bribery cases. *Grace v. E.J. Kozin & Co.*, 538 F.2d 170, 173 (7th Cir. 1976). Section 2(c) states:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. § 13(c). A plaintiff must allege a competitive injury to apply section 2(c). *Bunker Ramo Corp. v. Cywan*, 511 F. Supp. 531, 533 (N.D. Ill. 1981).

"[T]he simple fact of commercial bribery does not make all related injury antitrust

4

injury." *Miyano Mach. USA, Inc. v. Zonar*, 1993 US Dist LEXIS 963, at * 26 (N.D. Ill. Jan. 29, 1993). There, the plaintiff alleged that the defendant's bribes caused the plaintiff to lose sales. The plaintiff also claimed that the bribes caused "losses attributable to [the buyer's] inability to pay for purchases." The court concluded that these injuries were not anti-competitive injuries because there were no allegations that the plaintiff "sold [goods] for less than it would have without the bribe." *Zonar*, 1993 US Dist LEXIS 963, at * 27; *see also Gould Elecs. Corp. v. Galaxy Elecs., Inc.*, 1991 US Dist LEXIS 18421, at * 5 (N.D. Ill. Dec. 31, 1991) ("Even if an injury is causally related to an antitrust violation, it will not qualify as an antitrust injury unless it is attributable to an anti-competitive aspect of the practice under scrutiny.") (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 110 S. Ct. 1884, 1889 (1990)).

However, injuries from bribes that raise prices and force competitors to buy more expensive goods are proper antitrust injuries under the Robinson-Patman Act. *Grace*, 538 F.2d at 173-74. In that case, the defendant's bribery scheme forced the plaintiff to purchase products at a higher price to compensate for the bribes. In addition, the plaintiff also bought products from suppliers at higher prices than the defendant because of the bribes. The court determined that these injuries "effectively precluded the realization of [plaintiff's] maximum profit potential."

Here, Quantum does not allege that they were forced to sell parts to Emerson at a lower price because of the bribes. Furthermore, Quantum makes no allegations that show any type of anti-competitive injury – the key requirement for claiming a proper section 2(c) injury. Like the plaintiff in *Zonar*, Quantum alleges only that it could not collect on completed contracts, pending contracts, or the promises of future contracts and does not allege any specific effect on

competition. Instead, the injuries complained of are essentially a restatement of Quantum's state law claims in an attempt to obtain federal court jurisdiction.

Alleging a section 2(c) Robinson-Patman violation by Supreme is a serious charge. If Quantum intends to state an antitrust injury, it must set out more fully how competition was adversely affected by the Defendant's alleged conduct. Therefore, Quantum's Robinson-Patman claims are dismissed without prejudice to file an amended complaint.

Because it has been determined that federal jurisdiction does not presently exist to hear the federal claim, the issue of the exercise of supplemental jurisdiction over the accompanying state law claims is not before the Court.[1]

Therefore the remaining state law claims are dismissed without prejudice and without reaching the merits of the Defendants' motions to dismiss these claims.

## CONCLUSION

The Defendants' Motion to Dismiss the Complaint is Granted. The Plaintiffs shall, within twenty-one days from the date of this opinion, file an Amended Complaint that alleges federal jurisdiction if they can do so consistent with Rule 11.

Dated:

October 20 2003

JOHN W. DARRAH
United States District Judge

[1] 28 U.S.C. § 1367(a) permits federal courts to hear federal claims along with supplemental state law claims if the claims "derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quoting *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997)) (internal quotations and alterations omitted).

6